# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESIN A.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[2] <br><br> Defendant. | No. 18 C 1148 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Esin A. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

On April 27, 2014, Plaintiff applied for DIB, alleging that she became disabled on February 26, 2014 because of tennis elbow, a pinched nerve, bilateral carpal tunnel syndrome, and bilateral carpometacarpal (CMC) arthritis. (R. at 68–76). Her claim was denied on September 23, 2014. (*Id.* at 76). Instead of seeking reconsideration, Plaintiff filed another DIB application on May 28, 2015, through counsel, also alleging disability since February 26, 2014 due to tennis elbow, carpal tunnel syndrome, arthritis, high cholesterol, and high blood pressure/hypertension. (*Id.* at 77–87). Plaintiff's second application was denied initially on August 24, 2015 and upon reconsideration on October 8, 2015. (*Id.* at 87, 99). Plaintiff then requested a hearing and, represented by counsel, she testified before an Administrative Law Judge (ALJ) on February 1, 2017, with the assistance of a Turkish interpreter. (*Id.* at 30–56, 119–20). The ALJ also heard testimony from a vocational expert (VE). (*Id.* at 57–66).

On March 22, 2017, the ALJ issued an unfavorable decision. (R. at 10–27). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since February 26, 2014, the alleged disability onset date. (*Id.* at 15). At step two, the ALJ found that Plaintiff had the following severe impairments: carpal tunnel syndrome, tennis elbow, osteoarthritis, and other unspecified arthropathies. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 15–16).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except:

> she can frequently operate hand controls bilaterally. If the movement is repetitive, she can occasionally handle and finger, otherwise she can frequently handle and finger bilaterally. The claimant can crawl and climb ladders, ropes, and scaffolds occasionally.

(R. at 16). Moving to step four, the ALJ determined that Plaintiff could perform her past relevant work as a kitchen helper. (*Id.* at 19–20). Alternatively, the ALJ found at step five that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as a housekeeper, usher, and mail room clerk. (*Id.* at 20–21). Accordingly, the ALJ concluded that Plaintiff had not been under a disability since her alleged onset date. (*Id.* at 21).

On December 12, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or,

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to

4

prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on various grounds. After reviewing the record and the parties' briefs, the Court finds that remand is necessary because the ALJ: 1) erred in rejecting the August 2014 and February 2016 opinions of treating physician Orhan Kaymakcalan, M.D., and 2) failed to build an accurate and logical bridge between the evidence and the RFC's handling and fingering restrictions.[4]

**A. Dr. Kaymakcalan**

In mid-2013, Plaintiff began seeing Dr. Kaymakcalan, an orthopedic surgeon specializing in hand and reconstructive microsurgery. (R. at 254, 375–76). In March 2014, Dr. Kaymakcalan stated that Plaintiff could return to work if she was restricted to "light work" and lifting, at most, two pounds. (R. at 384). Later, in August 2014, Dr. Kaymakcalan filled out a medical certification update in which he stated that Plaintiff could lift 15 pounds and do light work, but she would need rests of two to three minutes per hour. (*Id.* at 438). He also opined that Plaintiff could use her right and left arms, tightly grip with both hands, and lightly finger with both hands for three to four hours in an eight-hour day. (*Id.*). In February 2016, Dr. Kaymakcalan completed a manipulative RFC questionnaire in which he stated that Plaintiff's grip strength was two to three pounds per square inch (psi) in each hand. (*Id.* at 447–49).

---

[4] Because the Court remands on these bases, it need not address Plaintiff's other arguments at this time.

5

An ALJ must give controlling weight to the opinion of a treating physician, like Dr. Kaymakcalan,[5] if it is both "well-supported" by medical evidence and "not inconsistent with the other substantial evidence" in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). But that is not the end of the inquiry: "[e]ven if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion," she still must "decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. In making this decision, the ALJ must consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)–(6).

The ALJ here accorded "little weight" to Dr. Kaymakcalan's opinions limiting Plaintiff "to light exertion with lifting between 2 and 15 pounds and no hand manipulation in August 2014," finding them "inconsistent with the Agency

---

[5] The Commissioner does not dispute that Dr. Kaymakcalan is a treating physician. (*See, e.g.*, Def.'s Mem., Dkt. 17 at 11 (referring to Dr. Kaymakcalan as a "treating source")).

6

consultative medical examiner's findings, [Plaintiff's] demonstrated performance during her functional capacity examination, and [Plaintiff's] reported manipulative capabilities." (R. at 18–19). The ALJ also found Dr. Kaymakcalan's February 2016 opinion regarding Plaintiff's grip strength conclusory and not supported by any objective evidence, rendering it less persuasive. (*Id.* at 19).

This evaluation, though, misinterpreted Dr. Kaymakcalan's August 2014 and February 2016 opinions and, as such, is not supported by substantial evidence. *See Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) ("Where [an ALJ] rejects a treating physician's opinion because it does not align with the [ALJ's] own incorrect interpretation of the medical evidence, that decision is not supported by substantial evidence.") (internal quotations omitted). First, the ALJ misread the August 2014 opinion as prohibiting Plaintiff from any hand manipulation. (R. at 18 (asserting that Dr. Kaymakcalan limited Plaintiff to "no hand manipulation in August 2014")). And the Commissioner reiterates this incorrect reading, arguing that in August 2014, Dr. Kaymakcalan opined that Plaintiff (1) was limited to "no hand manipulation" and (2) "could not perform any fingering or gripping at all, let alone use either hand at all." (Def.'s Mem., Dkt. 17, at 11, 12 (citing R. at 438 in both instances)). Dr. Kaymakcalan, however, gave no such opinion. In his August 2014 opinion, Dr. Kaymakcalan indicated that Plaintiff could occasionally (up to 3 to 4 hours in a day) use her right/

7

left arm/ hand/ leg; grip tightly with her right/ left hand; and perform light finger work with her right/ left hand. (R. at 438).[6]

Second, the ALJ found Dr. Kaymakcalan's February 2016 grip strength opinion conclusory because he "failed to offer any objective evidence to support [his] conclusion." (R. at 19). But the February 2016 opinion did, in fact, refer to supporting objective evidence. In identifying "the clinical findings and objective signs and testing used to form" his opinion, Dr. Kaymakcalan stated that he "measured strength on Jamar." (R. at 447). A "Jamar" dynamometer is used to measure grip strength. *See Chambers v. Shalala*, No. 93 C 6917, 1995 WL 228965, at *2 n.7 (N.D. Ill. Apr. 14, 1995) ("The Jamar Dynamometer measures the force grip of the hand and represents the power of squeezing between the thumb and fingers."); Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 *Archives of Physical Med. and Rehabilitation* 69, 69 (Feb. 1985); http://www.fcesoftware.com/images/5_Grip_and_Pinch_Norms.pdf (last visited Dec. 14, 2018) ("[T]he Jamar dynamometer has been found to give the most accurate measure of grip strength."). Notes recorded by Dr. Kaymakcalan on January 21, 2016—a little over a month before the February 2016 opinion—show four Jamar measurements taken of each hand (with each hand designated by a separate column). (R. at 451).[7] These measurements, ranging from 2 to 3, support Dr. Kaymakcalan's

---

[6] Dr. Kaymakcalan marked "O" on the form next to the use of the hands, tight gripping, and light fingering. (R. at 438). The form provides that the provider should use the letter "O" for "occasional" performance of the activity, up to three to four hours in an eight-hour day. (*Id.*).
[7] Dr. Kaymakcalan made similar notations elsewhere in the medical records. (*See, e.g.*, R. at 366–67, 404–05, 439).

8

February 2016 conclusion that Plaintiff's grip strength was only 2–3 psi in each hand. (*Id.* at 449).

Remand is required so that the ALJ can re-evaluate Dr. Kaymakcalan's August 2014 and February 2016 opinions based on a correct reading of their contents. *See Strobach v. Colvin*, No. 12 CV 50012, 2014 WL 1388285, at *4 (N.D. Ill. Apr. 9, 2014) ("[W]hen the ALJ's decision is grounded on a mistake of fact, the court must remand."); *see also Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) (remanding where an ALJ misread a treating source's functional assessment causing him to conclude that the treating physician overstated claimant's limitations).

In addition, even if the ALJ properly understood Dr. Kaymakcalan's opinions, the ALJ also erred by failing to "address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion[s]." *Segerstrom v. Berryhill*, No. 16 C 10164, 2017 WL 6733719, at *6 (N.D. Ill. Dec. 19, 2017). As the Social Security Administration's (SSA) own rulings state, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527[.]" SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).[8]

The ALJ did not carry out this required analysis for any of Dr. Kaymakcalan's opinions. For example, the ALJ did not acknowledge Dr. Kaymakcalan's specialty in

---

[8] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

9

hand and reconstructive microsurgery, which would weigh in favoring his opinions about Plaintiff's handling and fingering abilities over the opinions of non-specialists. 20 C.F.R. § 404.1527(c)(5); *see Israel*, 840 F.3d at 438 ("Social Security regulations specify that particular weight be given to the opinions of specialists related to their areas of expertise."). Nor did the ALJ analyze the length, nature, and extent of Dr. Kaymakcalan's treatment relationship or the frequency with which Dr. Kaymakcalan examined Plaintiff. 20 C.F.R. § 404.1527(c)(2)(i)–(ii). The ALJ's failure to address these aspects of Dr. Kaymakcalan's care prevents the Court from determining the reasonableness of her decision in light of the factors outlined in § 404.1527. On remand the ALJ is required to re-evaluate and reweigh Dr. Kaymakcalan's opinions based on a proper interpretation of their contents and by explicitly considering and addressing the factors set forth in 20 C.F.R. § 404.1527(c).

**B. The RFC's Handling and Fingering Restrictions**

The ALJ also erred in concluding that Plaintiff retained the RFC to "frequently handle and finger bilaterally" for non-repetitive movement, but to "occasionally handle and finger" if the movement was repetitive.[9] (R. at 16, 18).

An RFC is an administrative assessment of what work-related activities a claimant can perform despite her physical and mental limitations. *Young*, 362 F.3d

---

[9] Handling involves "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands," including the ability "to seize, hold, grasp, or turn an object." SSR 85-15, 1985 WL 56857, at *2, *7 (Jan. 1, 1985). Fingering "involves picking, pinching, or otherwise working primarily with the fingers." *Id.* at *7. Occasional handling and fingering would be performed very little to, at most, one-third of the workday (or approximately two hours of an eight-hour workday), whereas frequent handling and fingering would be performed between one-third and two-thirds of the workday (up to approximately six hours in an eight-hour workday). SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

10

at 1000; SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ makes this assessment "based upon the medical evidence in the record and other evidence, such as testimony by the claimant or [her] friends and family." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). In her decision, the ALJ must describe "how the evidence, both objective and subjective, supports each conclusion" contained in the RFC assessment. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008). In other words, the ALJ must build an "accurate and logical bridge from the evidence" to her RFC conclusion. *See Young*, 362 F.3d at 1002 (internal quotations omitted); *see also Moon*, 763 F.3d at 721 (explaining that under the "substantial evidence" standard of review, "the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination").

Here, the ALJ did not build the requisite "accurate and logical bridge" to support the RFC's handling and fingering restrictions. The ALJ's decision lacks any explanation as to why Plaintiff's "noted manipulative difficulties" and the medical opinions in the record support limiting Plaintiff to occasional handling and fingering *only* for repetitive movements, as opposed to for *all* movements (repetitive and non-repetitive). (*See* R. at 18). Indeed, the Commissioner only identifies a single piece of evidence that distinguished Plaintiff's manipulative abilities based on the repetitive/non-repetitive dichotomy of movement: the October 2015 opinion of state agency consultant Michael Nenaber, M.D., which limited Plaintiff to occasional repetitive grasping. (Def.'s Mem., Dkt. 17 at 9; R. at 95–96). But this limitation does not address Plaintiff's fingering and other non-grasping handling abilities

11

encompassed by the RFC restriction, such as seizing or turning an object. *See* SSR 85-15, at *2, *7. However, the ALJ explicitly gave Dr. Nenaber's opinion little weight, so it could not serve as the sole basis for the ALJ's handling and fingering restrictions. (R. at 18). As such, the ALJ appears to have relied solely on her own opinion of Plaintiff's manipulative abilities to conclude that the amount of time Plaintiff can handle and finger things (e.g., frequently or occasionally) depends on whether repetitive movement was involved. This was impermissible. *Dent v. Colvin*, No. 13 C 4452, 2014 WL 4435455, at *19 (N.D. Ill. Sept. 5, 2014) ("[T]he ALJ does not explain what evidence from the record supported her RFC finding. Thus, it appears the ALJ developed her own opinion regarding Plaintiff's manipulative limitations, which she cannot do.").

Moreover, the Court agrees with Plaintiff that the ALJ failed to build a logical bridge between her reliance on the August 2014 Functional Capacity Evaluation (FCE) and her RFC assessment. The August 2014 FCE found that Plaintiff could only occasionally firmly grasp with her left hand, without any distinction between repetitive and non-repetitive movements. (R. at 407–08). The ALJ, acknowledging this restriction, gave the August 2014 FCE "great weight" and stated that she incorporated similar restrictions in her RFC assessment. (*Id.* at 17–18). Yet the ALJ's RFC assessment did not restrict Plaintiff to occasional left-hand firm grasping without qualification, as the August 2014 FCE did. (*Compare id.* at 16, *with id.* at 407–08). By failing to incorporate the occasional left-hand firm grasping restriction from the August 2014 FCE without explanation, the ALJ failed to build an accurate

and logical bridge between this evidence (to which she gave "great weight") and her conclusion.

According to the Commissioner, the ALJ's RFC assessment is supported by the record because "virtually all medical source opinions were *less* restrictive or similarly restrictive with regard to manipulative functioning." (Def.'s Mem., Dkt. 17 at 9 (emphasis in original)). The word "virtually," though, notably qualifies the Commissioner's assertion, and there are, in fact, evaluations in the record that are *not* less or similarly restrictive about manipulative functioning. The August 2014 FCE is more restrictive with respect to Plaintiff's left hand, as it limits her to only occasional firm left-hand grasping regardless of whether the movement is repetitive or not. (R. at 407–08). And the 2–3 psi grip strength observed by Dr. Kaymakcalan in his February 2016 opinion suggests significant issues with Plaintiff's ability to handle things, which could affect the ALJ's assessed handling restriction. *Cf. Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (explaining that a finding that the claimant had trouble "handling" was "consistent with reduced grip strength," as "gripping is a form of handling"). And even if certain medical opinions could support the ALJ's decision to limit Plaintiff's occasional handling and fingering to only repetitive movement, that alone is not enough; the ALJ also had to link this evidence to her decision. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (explaining that even if "there is enough evidence in the record to support" an ALJ's decision, the decision cannot be upheld if the ALJ does "not build an accurate and logical bridge between the evidence and the result"). She did not do so here.

Contrary to the Defendant's assertion, the ALJ's errors were not harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). Here, the VE testified that if the hypothetical individual was limited to occasional handling and fingering, she could not perform Plaintiff's past work or other jobs. (*Id.* at 63). The Court does not know whether Plaintiff would be found capable of performing past work or other jobs in the economy if the ALJ decides, on remand, to incorporate the occasional left-hand firm grasping limitation from the August 2014 FCE, as the VE did not testify about an individual's ability to work with such a limitation. (R. at 57–66). Accordingly, remand is required.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [13] is **GRANTED**, and the Commissioner's motion for summary judgment [16] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 28, 2019

_____
MARY M. ROWLAND
United States Magistrate Judge